**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

<table>
<tr>
<td>

MYRIAN PAGAN MARRERO, GUILLERMO M. LEON PAGAN AND GLEWYNDALIZ LEON,

Plaintiffs,

vs.

HOSPITAL EPISCOPAL SAN LUCAS, INC.; BEAZLEY USA SERVICES, INC.; DR. SULEYKA M. OLIVERO RIVERA, DR. JAVIER ECHEVARRIA CRUZ, DR. JOSE ROMAN RAMOS; DR. CESAR CRUZ, DR. FRANCISCO PEREZ GIL, DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, SIMED, PRMD, ABC INSURANCE COMPANIES, EFG INSURANCE; JOHN DOE; JAMES ROE; DOES I-X

</td>
<td>

CIVIL NO.: 23-1293

MEDICAL MALPRACTICE

RE: TORT ACTION FOR MEDICAL MALPRACTICE PURSUANT TO ARTS. 1536 AND 1541, 31 P. R. Laws Ann. §§ 1080 AND 10806

TRIAL BY JURY DEMANDED

</td>
</tr>
</table>

**COMPLAINT**

**TO THE HONORABLE COURT:**

**APPEAR NOW** the Plaintiffs in this action, through the undersigned attorneys, and respectfully state, allege and pray as follows:

**JURISDICTIONAL BASIS & VENUE**

1. Plaintiffs **MYRIAN PAGAN MARRERO, GUILLERMO M. LEON PAGAN AND GLEWYNDALIZ LEON** are citizens of, domiciled in, and reside in the state of Florida.

2. Defendants are citizens of, domiciled in, incorporated in or with their principal place of business in Puerto Rico or a state other than Florida.

3. The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000),

exclusive of interest and costs, vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332.

4. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391 since the events or omissions giving rise to this claim occurred in this district.

## THE PARTIES

5. Plaintiff **MYRIAN PAGAN MARRERO** (hereinafter "Mrs. Myrian Pagan" or "Doña Myrian" or patient) is the patient that was treated at **HOSPITAL EPISCOPAL SAN LUCAS** by defendants, whereas Plaintiffs **GUILLERMO M. LEON PAGAN AND GLEWYNDALIZ LEON** are her son and daughter.

6. Co-Defendant **HOSPITAL EPISCOPAL SAN LUCAS** (hereinafter "**HESL**") owns and/or operates a hospital located in Ponce, Puerto Rico, wherein it provides its patients with a gamut of hospital services and/or hospital care, including nursing, emergency, cardiology, telemetry, respiratory therapy, surgery, ICU, radiology, laboratory and other hospital care and services.

7. Co-Defendant **BEAZLEY USA SERVICES, INC.,** (hereinafter "**BEAZLEY**") is an insurance company authorized by the Insurance Commissioner of the Commonwealth of Puerto Rico to do business in Puerto Rico and who, by information and belief, emitted an insurance policy in favor of **HESL**, which provides coverage for the facts involved in this case. **HESL** and **BEAZLEY** are both jointly and severally responsible for the damages alleged in this complaint.

8. Co-Defendant **DR. RAFAEL ESPINET PEREZ** (hereinafter "**DR. ESPINET**") was Doña Myrian's attending physician, while she was hospitalized at **HESL** from June 10 through June 18, 2022.

9. Co-Defendant **DR. JAVIER ECHEVARRIA CRUZ**, (hereinafter "**Dr. ECHEVARRIA**"), is an internal medicine physician, with privileges at **HESL who treated Doña Myriam while she was hospitalized** at **HESL** from June 10 through June 18, 2022.

10. Co-Defendant **DR. JOSE ROMAN RAMOS** (hereinafter "**Dr. ROMAN**") is a cardiologist with privileges at HESL and was one of Doña Myrian's cardiologists while she was hospitalized at HESL through June 18, 2022.

11. Co-Defendant **DR. CESAR CRUZ** (hereinafter "**Dr. CRUZ**") is a cardiologist with privileges at HESL and was one of Doña Myrian's cardiologists while she was hospitalized at HESL through June 18, 2022.

12. Co-Defendant **DR. ISABEL RODRIGUEZ CANDELARIO** (hereinafter "**Dr. RODRIGUEZ CANDELARIO**") is a cardiologist with privileges at HESL and was one of Doña Myrian's cardiologist while she was hospitalized at HESL through June 18, 2022.

13. Co-Defendant **DR. SULEYKA M. OLIVERO RIVERA** (hereinafter "**Dr. OLIVERO**") is an electrophysiologist with privileges at HESL and was part of the team of electrophysiologists that treated Doña Myrian's while hospitalized at HESL through June 18, 2022.

14. Co-Defendant **DR. FRANCISCO PEREZ GIL** (hereinafter "**Dr. PEREZ GIL**") is an electrophysiologist with privileges at HESL and was part of the team of electrophysiologists that treated Doña Myrian during her hospitalization at HESL through June 18, 2022.

15. Co-Defendant **HESL** assigned **DR. ECHEVARRIA CRUZ, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR.**

**FRANCISCO PEREZ GIL DR. JOSE ROMAN RAMOS AND DR. SULEYKA M. OLIVERO RIVERA** to treat Doña Myrian, as per established hospital protocol.

16. Codefendant **PUERTO RICO MEDICAL DEFENSE ("PRMD")** is an insurance company organized, existing, and with its principal place of business in Puerto Rico which issued insurance policies for medical malpractice on behalf of one or more of the Co-Defendants, known and unknown Joint Tortfeasors in this case, for the acts and/or omissions described herein, encompassing the relevant period of time.

17. Codefendant **SINDICATO DE ASEGURADORES PARA LA SUSCRIPCION CONJUNTA ("SIMED")** is an insurance company organized, existing, and with its principal place of business in Puerto Rico which issued insurance policies for medical malpractice on behalf of one or more of the Co-Defendants, known and unknown Joint Tortfeasors in this case, for the acts and/or omissions described herein, encompassing the relevant period of time.

18. Co-Defendants **ABC INSURANCE COMPANIES** are entities or corporations organized or operating under the laws of the Commonwealth of Puerto Rico, with their principal place of business in Puerto Rico or in a state other than Florida, which issued insurance policies on behalf of **HESL** for the acts or omissions described herein, encompassing the relevant period of time.

19. Co-Defendants **EFG INSURANCE** are entities or corporations organized or operating under the laws of the Commonwealth of Puerto Rico, with their principal place of business in Puerto Rico or in a state other than Florida, which issued insurance policies on behalf of one or more codefendants for the acts or omissions described herein, encompassing the relevant period of time.

20. Co-Defendants unknown joint tortfeasors **JOHN DOE** and **JAMES ROE** are physicians or other health care providers fictitiously named herein, to be later replaced by their actual names which may become known through further discovery in this litigation and who may be liable to Plaintiffs for the damages suffered, in whole or in part, for the actions and/or omissions herein described, encompassing the relevant period of time.

21. Co-Defendants **DOES I-X**, fictitiously named herein to be later replaced by the action name which may become known through further discovery in this litigation, which are individuals, business entities and/or corporations who are citizens of Puerto Rico or a state other than Florida, who caused and/or contributed through their own acts or omissions or the acts or omissions of the employees, agents, or assignees in violation of 31 L.P.R.A. §5141 and/or 31 L.P.R.A.§5142 to the damages caused to Plaintiffs in this case, for which they are jointly and severally liable to Plaintiffs.

## GENERAL ALLEGATIONS

22. Myrian Pagán was a 68-year-old woman at the time of this incident, who was fully independent, lived alone, took care of herself, drove a car, liked to walk, tend to her garden and was a retired secretary.

23. On or about June 10, 2022, Myrian Pagan arrived at HESL's emergency ward complaining of substernal chest "pressure" pain of 5/10 after ingesting a cold beverage.

24. She presented at HESL's emergency room in stable condition and underwent appropriate evaluation.

25. Mrs. Pagán's vital signs were within normal limits except that her blood pressure and mild tachycardia without evidence of acute ischemic changes.

26. Myrian Pagán was admitted to HESL, under the care of attending physician Dr. Rafael Espinet Perez, as per hospital protocol.

27. Dr. Echevarría Cruz, an internal medicine physician involved with the treatment of Mrs. Pagan placed a cardiology consult.

28. Dr. José Román Ramos answered the cardiology consult and described the patient "with SVT and then Atrial fibrillation during ER evaluation". His recommendation was an EP consult, 2-D Echo and for Dr. Echevarría Cruz to continue care.

29. Mrs. Pagán was admitted to telemetry unit at HESL.

30. Dr. ISABEL Rodriguez Candelario informed Mrs. Pagan that she required an ablation procedure.

31. Dr. Francisco Perez Gil was the electrophysiologist initially consulted and he answered the consult on June 12, 2022.

32. Mrs. Pagán had a cardiac catheterization which showed no evidence of obstructive coronary artery disease, and that the prior left anterior descending artery stent was open and unobstructed.

33. However, on the evening of June 14, 2022, electrophysiologist Dr. Suleyka M. Olivero Rivera performed the electrophysiological (EP) study and pulmonary vein ablation.

34. Shortly after 20:00hrs, Dr. Olivero Rivera reports no complication at the completion of the procedure and refers the patient to the post anesthesia care unit or (PACU).

35. At 21:45hrs. Mrs. Pagan becomes hypotensive, unable to move her right arm and leg with a facial droop.

36. Nurses only reported that the patient was hemodynamically stable and hard to arouse.

37. Nurses failed to observe or mention obvious neurological focal deficits and erroneously

presumed she was evolving from anesthesia.

38. Eventually Dr. Olivero Rivera ordered a head CT, but failed to initiate either Stroke Protocol of administering systemic TNK or rt-PA.

39. The MRI is not done until the following morning, revealing a thrombotic acute left middle cerebral artery infarct (LMCA).

40. The delay in initiating either Stroke Protocol of administering systemic TNK or rt-PA and confirming the LMCA embolic stroke, caused Mrs. Pagán to suffer a debilitating neurological event with the known sequel of hemiparesis.

41. Dr. Cesar Cruz also saw and treated Mrs. Pagan during her admission and wrote multiple cardiology progress notes in her medical record.

42. Mrs. Pagán was submitted by her doctors, after a poor history intake and evaluation, to an ill-advised and contraindicated catheter ablation since she had converted to normal sinus rhythm with chemical cardioversion in the emergency department.

43. Mrs. Pagán suffered a post procedural cerebrovascular accident (CVA) which was not promptly identified nor immediately and adequately treated.

44. As a direct result of Defendants' combined negligence and failure to properly provide Doña Myrian with adequate medical and nursing care, Doña Myrian's dominant right side has been severely affected to the point that cannot talk, walk, or care for herself. Instead, she must rely on her son and daughter for round the clock care, vigilance, and assistance in carrying out basic life functions.

45. Plaintiffs have suffered much physical and emotional pain and suffering, a direct result of Defendants' negligence and/or the negligence of their employees, agents, or assignees.

**FIRST CAUSE OF ACTION UNDER ARTICLE 1536 & 1540 OF THE PUERTO RICO CIVIL CODE AGAINST HESL AND ITS PERSONNEL**

46. The allegations contained above are incorporated by reference as if again fully set forth herein.

47. Defendant **HESL**, through the acts or omissions of its employees, personnel, nurses, doctors, agents, sub-contractors, or assignees, caused damage to Plaintiffs through fault or negligence in violation of articles 1536 and 1540 of the Puerto Rico Civil Code.

48. Defendant **HESL** provides nursing, cardiology, telemetry, post-surgical nursing care, radiology and medical care to all types of patients, including those with medical conditions, such as Myrian had.

49. Defendant **HESL** contracted, employed, provided privileges or arranged for **DR. ECHEVARRIA CRUZ, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL, DR. JOSE ROMAN RAMOS AND DR. SULEYKA OLIVERO RIVERA** to provide medical consultations, evaluations and treatment to patients, including to Myrian, during the times pertinent to this Complaint.

50. Defendant **HESL** has established policies, procedures and/or requirements for the provision of the nursing/medical treatment for patients, such as Myrian.

51. Defendant **HESL's** established policies, procedures and/or requirements for the provision of the nursing/medical treatment and preventive care for patients who are at risk of a stroke or CVA, such as Myrian.

52. Defendant **HESL** supplies doctors, nurses, therapists, clerical, administrative, and technical personnel to treat patients such as Myrian.

53. Defendant **HESL** has an inadequate system to properly monitor patients when they are in distress or need immediate attention.

54. Defendant **HESL** has monitors that sound alarms that cannot be heard or detected unless the nurses come into the hospital room.

55. Defendant **HESL** failed to ensure that Doña Myrian received close and effective monitoring by nurses.

56. Defendant **HESL** derives revenue from the services it provides it patients.

57. Defendant **HESL** is liable for medical/nursing malpractice caused by the personnel it hires to provide services to its patients.

58. Defendant **HESL** owed a duty to Plaintiffs to provide nurses, doctors, facilities, staffing, treatment and medical care consistent with the medical standards that satisfy the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching.

59. The treatment offered by **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, to Myrian was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching, and as such directly caused and/or contributed to causing Myrian's permanent disabilities and the injuries to Plaintiffs, as described herein.

60. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, failed to exercise the care and precautions required under the circumstances in order to prevent the damage and injuries to Plaintiffs, lacked the required knowledge and medical/nursing skill, failed to timely have available the personnel, medication and equipment necessary to avoid the injuries and subsequent injuries to Plaintiffs.

61. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, negligently failed to adequately monitor Doña Myrian's delicate condition after the

ablation procedure.

62. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, negligently failed to recognize the serious nature of the Myrian's Cerebral vascular accident (CVA).

63. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, negligently and carelessly failed to timely treat Doña Myrian's stroke all of which resulted in her permanent brain damage.

64. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, negligently failed to timely and properly administer Tenecteplase or Alteplase to decrease the clot burden and re-establish flow in order to avoid Doña Myrian's anoxic brain injury.

65. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, failed to ensure proper and timely nursing and medical services, equipment and medication were made available to Doña Myrian.

66. At all times herein pertinent, Defendant **HESL**, through its executives, directors, personnel, nurses, employees, doctors, agents and assignees were negligent in failing to provide the proper medical attention to Myrian, in failing to provide the proper supervision or management of **DEFENDANTS DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. CESAR CRUZ** , **DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL and DR. JOSE ROMAN**, as well as the medical and other personnel it employs, and otherwise failing to exercise due care and caution to prevent the tortious conduct and injuries to Plaintiffs.

67. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, offered medical services to patients such as a cardiac ablation, knowing that it could cause

a stroke but then failed to staff and equip its HOSPITAL with the medical personnel, equipment and medication necessary to timely, appropriately, and safely treat and/or transfer its patients and ensure appropriate and timely treatment for the stroke.

68. Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, offered medical services to patients, including the catheter ablation which could and did cause a CVA, but then failed to provide the needed immediate thrombolytic therapy or, in its absence, transfer Mrs. Pagan to an institution that could adequately treat her.

69. Defendant **HESL**'s delay in diagnosing and treating Mrs. Pagan's embolic stroke with ischemia resulted in a devastating stroke with catastrophic results.

70. Defendant **HESL**'s failure to have at least one working MRI, contributed to the failure to adequately treat Mrs. Pagan's embolic stroke with ischemia resulted in a devastating stroke with catastrophic results.

71. Defendant **HESL**'s failure to timely transfer Mrs. Pagan to a facility with adequate medical, nursing personnel, medication and equipment resulted in a devastating stroke with catastrophic results.

72. In so doing, Defendant **HESL**, through its personnel, nurses, employees, doctors, agents and assignees, misled those who sought full medical treatment into thinking that they would be appropriately treated.

73. As a direct and proximate cause of Defendant **HESL's** acts or omissions, through its personnel, nurses, employees, doctors, agents and assignees, including its failure to properly treat Doña Myrian, Plaintiffs son and daughter must care for her for the rest of her life. They have sustained damages, including mental, and emotional pain and suffering and associated damages, as described below.

74. At all pertinent times, **HESL**'s directors, officials, and doctors with privileges were negligent when they failed to follow **HESL** protocols and provide the adequate medical attention that Myrian required.

75. **HESL** is liable for failure to provide, disclose, or enforce proper protocols to ensure proper care by doctors and nursing staff in the treatment of patients such as Myrian who suffer a stroke after an ablation procedure.

76. Defendant **HESL** is liable for the negligent acts or omissions of its personnel, agents, and employees including **DR. ECHEVARRIA CRUZ**, **DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ**, **DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, and **DR. FRANCISCO PEREZ GIL** as described herein.

**SECOND CAUSE OF ACTION FOR NEGLIGENCE UNDER ARTICLES 1535 & 1540 OF DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ, DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL**

77. The allegations contained above are incorporated by reference as if again fully set forth herein.

78. Defendants **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL** and/or other unknown joint tortfeasors, through their acts or omissions, caused damage to Plaintiffs through fault or negligence in violation of 31 L.P.R.A. §5141 and/or 31 L.P.R.A.§5142.

79. Defendants **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR.**

**RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL** and/or other unknown joint tortfeasors owed a duty to Doña Myrian and to Plaintiffs to provide medical care and treatment consistent with the medical standards that satisfy the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching.

80. Defendants **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL** and/or other unknown joint tortfeasors' treatment of Doña Myrian was below the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching, and as such directly caused and/or contributed to causing Plaintiffs the injuries as described herein.

81. At the time of the incidents giving rise to this Complaint, Defendant **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL** were treating physicians assigned by **HESL** to treat Doña Myrian while she was admitted to **HESL**.

82. Defendant **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL** negligently and carelessly offered, allowed for and/or performed a catheter ablation which was an ill-advised and contraindicated procedure for Mrs. Pagán.

83. Defendant **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE**

**ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL** negligently and carelessly failed to provide Doña Myrian with a rapid and accurate diagnosis and treatment of the CVA.

84. Defendant **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL** negligently and carelessly failed to closely monitor Doña Myrian after the catheter ablation, and thus promptly detect and treat her brain stroke.

85. Defendants **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL** and/or other potentially unknown joint tortfeasors failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to appropriately intervene, examine, and treat Doña Myrian, but instead allowed her stroke to evolve without the required treatment and become permanent and irreversible.

86. In the alternative, **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ, DR. FRANCISCO PEREZ GIL** allowed their patient Mrs. Pagán to undergo a catheter ablation knowing that HESL was unable or ill equipped to adequately treat the stroke which was a potential consequence.

87. **DR. ECHEVARRIA CRUZ , DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR.**

**CESAR CRUZ**, **DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL** failed to immediately transfer Mrs. Pagán to an institution that could adequately treat her ischemic stroke.

88. In so doing, Defendants **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ**, **DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL** and/or other potential unknown joint tortfeasors, committed professional negligence, including lack of expertise, fault, and malpractice, which directly and proximately caused the injuries and damages suffered by Plaintiffs, particularly for the suffering and brain damage of Doña Myrian, as detailed herein.

89. As a direct and proximate cause of Defendants **DR. ECHEVARRIA CRUZ, DR. SULEYKA OLIVERO, DR. JOSE ROMAN, DR. CESAR CRUZ , DR. ISABEL RODRIGUEZ CANDELARIO, DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL** and/or other potentially unknown joint tortfeasors' acts or omissions, including their failure to properly and timely treat Doña Myrian, Plaintiffs sustained damages, including emotional, mental, physical, and economic damages, as described below.


**THIRD CAUSE OF ACTION AGAINST**
**BEAZLEY USA SERVICES, INC.**

90. The allegations contained above are incorporated by reference as if again fully set forth herein.

91. Co-Defendant **BEAZLEY** was at all times herein pertinent as an insurance company authorized to do business in the Commonwealth of Puerto Rico and which issued public liability and/or malpractice insurance policies on behalf of Co-Defendant, **HESL.**

92. Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

93. Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

94. Therefore, Co-Defendant **BEAZLEY** is jointly and severally liable to Plaintiffs for the damages caused to them and their mother by Co-Defendant **HESL**.

**FOURTH CAUSE OF ACTION AGAINST**
**SIMED AND/OR PRMD AS INSURERS OF ONE OR MORE DEFENDANT**
**DOCTORS**

95. The allegations contained above are incorporated by reference as if again fully set forth herein.

96. Co-Defendants **SIMED and/or PRMD** were at all times herein pertinent as an insurance companies authorized to do business in the Commonwealth of Puerto Rico, and which issued public liability and/or malpractice insurance policies on behalf of one or more doctor Co-Defendants.

97. Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is liable for the negligence or fault of its insured.

98. Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

99. Therefore, Co-Defendants **SIMED and/or PRMD** are jointly and severally liable to Plaintiffs for the damages caused to them by one or more Co-Defendant doctors.

**FIFTH CAUSE OF ACTION AGAINST**
**UNKNOWN INSURERS ABC, EFG INSURANCE**

100. The allegations contained above are incorporated herein by reference as if again fully set forth.

101. Defendants fictitiously named as **ABC, EFG**, were, at all times herein pertinent, insurance companies authorized to do business as such in the Commonwealth of Puerto Rico which issued a public liability and/or malpractice insurance policy and/or other applicable insurance on behalf of Defendants, and /or other unknown joint tortfeasors.

102. Pursuant to 26 P.R. Laws Ann. § 2001, Defendants **ABC, EFG** are jointly and severally liable for the negligence or fault of their insured.

103. Pursuant to 26 P.R. Laws Ann. § 2003, this action is brought directly against Defendant **ABC, EFG**.

**SIXTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST**
**JOHN DOE AND JAMES ROE UNKNOWN JOINT TORTFEASORS**

104. The allegations contained above are incorporated by reference as if again fully set forth herein.

105. Co-Defendants **JOHN DOE** and **JAMES ROE** are so designated for lack of knowledge at this point in the proceedings.

106. Co-Defendants **JOHN DOE** and **JAMES ROE's** intervention in the nursing, technical or medical care of Doña Myrian while at Co-Defendant **HESL** was below the nursing, technical and medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching and, as such, directly caused and/or contributed to causing Doña Myrian's brain damage and total

incapacitation and, thus, the pain and suffering of Doña Myrian while hospitalized and after discharge.

107. Co-Defendants **JOHN DOE** and **JAMES ROE** negligently and carelessly, breaching the medical standard that satisfies the exigencies generally recognized by the medical profession in light of the modern means of communication and teaching, failed to do the necessary monitoring, testing and assessment of Doña Myrian, commensurate with his reported symptoms of deterioration, and, as such, directly caused and/or contributed to causing Doña Myrian's physical injury and emotional pain, as well as her incapacitation and the emotional pain and suffering her condition has caused upon co-plaintiffs.

108. Co-Defendants **JOHN DOE** and **JAMES ROE** negligently and carelessly failed to exercise reasonable care and skill commensurate with the standard of care practiced in the medical profession at that time and under like and similar circumstances when they failed to correctly and promptly recognize and treat the patient's symptoms and condition and, thus, failed to provide a prompt, complete, thorough and adequate medical evaluation and treatment.

109. Co-Defendants **JOHN DOE** and **JAMES ROE** negligently and carelessly failed to promptly test, monitor, evaluate and treat Doña Myrian's symptoms, thus denying her the provision of essential treatment.

110. Co-Defendants **JOHN DOE** and **JAMES ROE** negligently and carelessly failed to provide proper care to their patient, Doña Myrian, by failing to engage in her examination, evaluation of symptoms, and care on a timely basis, so that they did not follow up on the signs and symptoms of the stroke.

111. As a direct and proximate cause of Co-Defendants **JOHN DOE** and **JAMES ROE's** negligent actions and omissions upon being presented with a patient in Doña Myrian's condition and with his clinical signs, Doña Myrian was deprived of the opportunity to be promptly treated when time was of the essence and the Plaintiffs must suffer the consequences of the brain damage and incapacitation of Doña Myrian.

112. In so doing, Co-Defendants **JOHN DOE** and **JAMES ROE** committed professional negligence, including lack of expertise, fault and malpractice, which directly and proximately caused the brain damage and total incapacitation of Doña Myrian, as detailed herein.

### SEVENTH CAUSE OF ACTION AGAINST ALL CO-DEFENDANTS FOR ALL LIENS OR PAYMENTS THAT MEDICARE, MEDICARE ADVANTAGE, MEDICAID AND/OR ANY STATE OR FEDERAL AGENCIES ARE ENTITLED TO RECOVER AS A RESULT OF THE STROKE

113. The allegations contained above are incorporated by reference as if again fully set forth herein.

114. Co-Defendant Doctors **SULEYKA M. OLIVERO RIVERA, JAVIER ECHEVARRIA CRUZ, JOSE ROMAN RAMOS**, **DR. CESAR CRUZ**, **DR. ISABEL RODRIGUEZ CANDELARIO**, **DR. RAFAEL ESPINET PEREZ**, **DR. FRANCISCO PEREZ GIL,** and **HESL's** personnel committed professional negligence including lack of experience, failures and bad practice, requiring that Doña Myrian be subjected to a medical procedure, which directly and immediately caused her extended suffering, culminating in her brain damage and total incapacitation.

115. The medical treatment received by Doña Myrian at **HESL and afterwards** was covered by Medicare and/or Medicare Advantage, which could be entitled to recover in whole or

in part that monetary amount incurred for said treatment provided as a result of professional negligence of the co-defendants.

116. Plaintiffs claim from the co-defendants and/or any third-party payer any lien or amount to be paid that is entitled to Medicare, Medicare Advantage, Medicaid, and/or any state or federal agency because of benefits, if any, that the patient received as a result of the allegations in this complaint.

117. At the moment, it is unknown if any amount is owed, but in case it is owed, the defendants need to compensate or reimburse that amount to be determined.

## DAMAGES

118. The allegations contained above are incorporated herein by reference as if again fully set forth.

119. As a direct and proximate result of the acts or omissions of all Co-Defendants, Doña Myrian Pagan's right side of her body is limp, unresponsive and weak.

120. Doña Myrian can no longer talk, walk or live independently.

121. Doña Myrian spends most of her time in a wheelchair and can only walk a few steps with the assistance of a walker and another person's assistance.

122. As a result of the untreated stroke, Doña Myriam has aphasia which is a language disorder caused by damage in a specific area of the brain that controls language expression and comprehension and can no longer speak.

123. As a result of the untreated stroke, Doña Myriam has apraxia which is the loss of ability to execute or carry out skilled movement and gestures, despite having the physical ability and desire to perform them.

124. As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Doña Myrian must depend on her adult children to care for her.

125. As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Plaintiffs' quality of life has been catastrophically impaired.

126. As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Doña Myrian continues to undergo speech therapy, occupational therapy and physical therapy.

127. As a result of the professional negligence, lack of expertise, fault, and malpractice of all Co-Defendants, Plaintiffs are living through the extraordinary pain and suffering of witnessing their beloved mother struggle to move, communicate and live due to the brain damage and total incapacitation, knowing that it was avoidable.

128. The negligent acts and omissions of the Defendants have directly and proximately caused Plaintiff **MYRIAN PAGAN** physical incapacitation which is permanent and irreversible for the remainder of her life valued in an amount of no less than **TWO MILLION DOLLARS ($2,000,000)**.

129. The negligent acts and omissions of the Defendants have directly and proximately caused Plaintiff **MYRIAN PAGAN** intense emotional and mental pain and suffering, frustration and a grave sense of injustice equal to a sum not less than valued in an amount of no less than **TWO MILLION DOLLARS ($2,000,000)**.

130. The negligent acts and omissions of the Defendants have directly and proximately caused **MYRIAM PAGAN** to incur in additional expenses services, medication, equipment to manage her permanent disabilities for the remainder of her life caused by the negligence

described above; these are valued in no less than **FIVE MILLION DOLLARS ($5,000,000).**

131. The negligent acts and omissions of the Defendants have directly and proximately caused Plaintiff **GUILLERMO M. LEON PAGAN** intense emotional and mental pain and suffering, frustration and a grave sense of injustice equal to a sum not less than **SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($750,000.00)**.

132. The negligent acts and omissions of the Defendants have directly and proximately caused Plaintiff **GLEWYNDALIZ LEON** intense emotional and mental pain and suffering, frustration and a grave sense of injustice equal to a sum not less than **SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($750,000.00)**.

133. In total, the damages suffered by Plaintiffs have a reasonable value in excess of **TEN MILLION FIVE HUNDRED THOUSAND DOLLARS ($10,500,000.00).**

## TRIAL BY JURY DEMANDED

134. Plaintiffs demand trial by jury on all causes of action herein raised.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against all Defendants jointly and severally, in an amount not less than **TEN MILLION FIVE HUNDRED THOUSAND DOLLARS ($10,500,000.00)** as well as, any past, present and future medical costs that must be reimbursed to Medicare as a result of the stroke, as well as costs incurred, reasonable attorneys' fees, and such other and further relief as this Honorable Court may seem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 5th day of June 2023.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor

San Juan, P.R. 00912Tel: (787) 641-4545;
Fax: (787) 641-4544
jeffrey.williams@indianowilliams.com
vanesa.vicens@indianowilliams.com
joanne.pimentel@indianowilliams.com


By: s/ Jeff Williams
    JEFFREY M. WILLIAMS
    USDC PR Bar No. 202104

    s/ Vanesa Vicéns
    VANESA VICÉNS
    USDC PR Bar No. 217807

    s/Joanne Pimentel de Jesús
    JOANNE PIMENTEL DE JESÚS
    USDC PR Bar No. 309005